IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORMAN K.,[1]                                                    Case No. 6:21-cv-00518-SB

               Plaintiff,                                    **OPINION AND ORDER**

      v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

               Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

       Norman K. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this

appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted as the defendant. *See* FED. R. CIV. P. 25(d)(1).

magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff filed an application for DIB alleging a disability onset date of December 15, 2011. (Tr. 16.) His claim was denied initially and upon reconsideration, and on September 11, 2020, Plaintiff appeared by phone for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 16.) In a written decision dated November 3, 2020, the ALJ denied Plaintiff's application.

(Tr. 16-26.) The Appeals Council denied Plaintiff's request for review on February 16, 2021, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

III.    **THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 16-26.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity for at least a continuous twelve-month period prior to his date last insured of March 31, 2018. (Tr. 19.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments through his date last insured: posttraumatic stress disorder ("PTSD"), major depressive disorder ("MDD"), attention-deficit hyperactivity disorder ("ADHD"), polysubstance abuse, and lumbar spine degenerative disc disease. (Tr. 19.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 20.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and determined that Plaintiff retained the ability to perform light work, subject to the following limitations: "[Plaintiff] is able to understand, remember, carry out and persist at simple, routine, repetitive tasks, make simple work-related decisions, and perform work with few if any changes in the workplace. [Plaintiff] is not able to perform assembly-line pace work. [Plaintiff] can perform work with no contact with the general public and no more than occasional contact with coworkers." (Tr. 21.)

At step four, the ALJ concluded that Plaintiff was unable to perform any of his past relevant work as a rigger, chaser, or forward observer. (Tr. 24-25.) At step five, the ALJ determined that Plaintiff retained the ability to perform a significant number of jobs existing in the national economy, including cannery worker, small parts assembler, and hand packager assembler. (Tr. 26.) The ALJ therefore concluded that Plaintiff was not disabled through his date last insured. (*Id.*)

///

**DISCUSSION**

Plaintiff argues that the ALJ erred by failing to: (1) provide specific, clear, and convincing reasons for discounting his subjective symptom testimony; (2) properly perform a drug addiction and alcoholism ("DAA") materiality analysis pursuant to SSR 13-2p; and (3) find Plaintiff meets a Listing at step three of the sequential evaluation process.

**I.    PLAINTIFF'S SYMPTOM TESTIMONY**

**A.    Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

**B.    Analysis**

The ALJ noted evidence of malingering in the medical record, which lowers the standard of review for the ALJ's evaluation of Plaintiff's testimony. Specifically, the ALJ considered the opinion of Richard Turner, M.D., who diagnosed Plaintiff with "malingering to avoid legal consequences." (Tr. 2673.) Dr. Turner explained that Plaintiff had learned of a felony warrant for his arrest, and subsequently complained unconvincingly of hallucinations and paranoia to the Veterans Administration hospital. (*Id.*) Dr. Turner performed a psychiatric assessment and

"questioned the sincerity of [Plaintiff's] symptoms," describing Plaintiff as "calculating and shrewd." (Tr. 2270, 2278, 2702.) Dr. Turner concluded that Plaintiff's "rapid (remarkable) resolution of . . . symptoms argues more for malingering (to avoid legal consequences) than any other diagnosis at this time." (Tr. 2278.) A second provider, David Seigler, M.D., assessed Plaintiff's avowals of suicidal ideation in 2018 as "strong indicators of secondary gain" in light of Plaintiff's future orientation. (Tr. 488.)

While Plaintiff argues that the ALJ should overlook this evidence of malingering as a symptom of Plaintiff's drug use as well as his past traumas, he provides no legal argument or case law in support of his position. On this record, the ALJ reasonably determined that there was evidence of malingering, and therefore the ALJ was not required to meet the "clear and convincing reasons" standard to discount Plaintiff's testimony, but rather was only required to support her evaluation of Plaintiff's symptom testimony with substantial evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) ("The only time th[e clear and convincing reasons] standard does not apply is when there is affirmative evidence that the claimant is malingering." (citing *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) and *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999))).

The ALJ provided at least one reason to reject Plaintiff's testimony, and the reason was supported by substantial evidence. The ALJ found that Plaintiff's symptoms improved with treatment, and in the Ninth Circuit, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Here, Plaintiff was compliant with medication in 2014 and presented as polite, cooperative, sincere, and with good rapport, with no signs of psychosis or mania. (Tr. 2777-78.) On examination, Plaintiff's cognitive functioning, orientation, memory, and concentration were

intact, with adequate insight, judgment, and impulse control. (Tr. 2778.) Plaintiff confirmed in March 2015 that he was feeling better on his medication and repeatedly presented as feeling "good," with normal orientation, good attention, and focused thoughts. (Tr. 1470.)

On this record, the ALJ presented a legally sufficient reason to find Plaintiff's testimony unpersuasive and supported the reason with substantial evidence. The Court therefore affirms the ALJ's evaluation of Plaintiff's testimony.

## II.    DAA MATERIALITY ANALYSIS

### A.    Applicable Law

According to 42 U.S.C. § 1382c(a)(3)(J), an individual shall not be considered disabled if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled. Agency policy clarifies that, when "we determine that a claimant is disabled . . . , we must then determine whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol; that is, we will determine whether a DAA is 'material' to the finding that the claimant is disabled." SSR 13-2p, *available at* 2013 WL 621536. SSR 13-2p thus requires that the Agency make a DAA materiality determination when there is evidence that a claimant has a substance use disorder and that the claimant is disabled considering all the claimant's impairments including those caused or exacerbated by substance use.

### B.    Analysis

Plaintiff argues that the ALJ failed to conduct a proper DAA materiality analysis. The Court disagrees. The ALJ considered all of Plaintiff's impairments and found that he is not disabled, and therefore the ALJ was not required to perform a DAA materiality analysis. *See Valdez v. Comm'r of Soc. Sec.*, No. 1:15-CV-03151-MKD, 2017 WL 6045965, at *3 n.2 (E.D.

PAGE 7 – OPINION AND ORDER

Wash. Mar. 27, 2017) ("The ALJ found Plaintiff is not disabled; accordingly, no further DAA materiality analysis was required." (citing *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007))).

Plaintiff argues that the ALJ's RFC implicitly suggests that she would have found Plaintiff disabled if she had considered the impact of his substance use, thus triggering the duty to perform a DAA analysis. However, the ALJ considered Plaintiff's substance use and found that he was not disabled. Even if the Court accepts Plaintiff's argument that the DAA materiality analysis was nevertheless triggered here, the ALJ *did* consider whether Plaintiff would be disabled if he stopped using drugs by qualifying her assessments of Plaintiff's functioning with statements such as "particularly when he is not under the effects of substance use." (ECF 21, at 2, *citing* Tr. 20-22.) Thus, even if the ALJ erred by not performing the DAA materiality analysis, the ALJ nevertheless determined that Plaintiff was not disabled absent his drug use. Thus, even if the ALJ's failure to perform a DAA materiality analysis was error, it was not harmful.

## III.   STEP THREE FINDINGS

### A.   Applicable Law

At step three of the sequential evaluation, the ALJ considers the medical evidence to determine whether the claimant's combined impairments meet or equal a listed impairment. The claimant bears the burden of proof at step three. *See Bustamante*, 262 F.3d at 953-54. Further, "[i]t is unnecessary to require the [Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

### B.   Analysis

Plaintiff argues that the ALJ erred by failing to find that his combined impairments meet or equal Listing 12.15 (trauma and stressor-related disorders). In her written opinion, the ALJ

PAGE 8 – OPINION AND ORDER

discussed the Paragraph B and C criteria for Listing 12.15 and concluded that Plaintiff did not

meet or equal either set of criteria. (Tr. 20-21.)

   To meet the Paragraph B criteria, a claimant must show an extreme limitation in one, or

marked limitations in two, of the following functional areas: (1) understand, remember, or apply

information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt or

manage oneself. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, 12.15(B). Alternatively, a claimant

must satisfy the listing under Paragraph C by showing evidence of "[m]edical treatment, mental

health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that

diminishes the symptoms and signs of [the claimant's] mental disorder" and a marginal

adjustment, or the "minimal capacity to adapt to changes in [the claimant's] environment or to

demands that are not already part of [the claimant's] daily life." 20 C.F.R. Part 404, Subpt. P,

App. 1, 12.15(C).

   Here, the ALJ reasonably determined that Plaintiff did not satisfy either Paragraph B or

C. First, the ALJ found that Plaintiff had only moderate limitations with respect to the four

Paragraph B criteria. (Tr. 20-21.) With respect to Paragraph C, the ALJ found that "the evidence

fails to establish the presence of the 'paragraph C criteria'" because Plaintiff only had moderate

limitations in adapting or managing himself, and because Plaintiff can sustain his level of

functioning absent a very structured environment. (Tr. 21.) The ALJ supported these findings by

reasoning that Plaintiff was capable of planning out-of-state travel to see friends, indicating an

ability to function outside of a structured environment. (Tr. 2844.) Further, the ALJ noted that

Plaintiff was able to manage his medications and activities of daily living while maintaining a

supportive relationship with his father. (Tr. 2817.) Finally, the ALJ cited evidence that Plaintiff

was planning to buy a house and wanted to return to school, indicating no more than moderate

limitations on his ability to manage himself. (Tr. 2950.) On this record, the Court finds that the ALJ's step three findings were supported by substantial evidence. *Cf. Steven L. v. Saul*, No. 4:19-CV-5278-EFS, 2020 WL 7012006, at *6 (E.D. Wash. Oct. 5, 2020) ("[T]he longitudinal medical record reflected that Plaintiff's mental-health symptoms improved with treatment. Because the ALJ's decision that Plaintiff did not meet either Paragraph B or Paragraph C criteria was supported by substantial evidence, Plaintiff fails to establish error as to these listings.").

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 17th day of June, 2022.

HON. STACIE F. BECKERMAN
United States Magistrate Judge