IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORMAN K.,[1]

               Plaintiff,

      v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

               Defendant.

Case No. 6:21-cv-00518-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

      This matter comes before the Court on Norman K.'s ("Plaintiff") motion to alter or amend the Court's judgment in his Social Security appeal, pursuant to Federal Rule of Civil Procedure ("Rule") 59(e). Plaintiff asks the Court to reconsider its Opinion and Order dated June 17, 2022, which affirmed the Commissioner of the Social Security Administration's ("Commissioner") denial of Plaintiff's application for Disability Insurance Benefits under Title

---

[1] Tragically, the claimant died by suicide on August 11, 2022. The Court allowed the claimant's father to substitute as the plaintiff in this action. (ECF No. 30.) Although the father is now the substitute plaintiff, the Court refers to the original claimant as "Plaintiff" herein. In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties.

II of Social Security Act. The parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court grants Plaintiff's

motion.

## DISCUSSION

## I.    STANDARD OF REVIEW

"Rule 59(e) allows a litigant to file a 'motion to alter or amend a judgment' . . . [no later

than] 28 days from entry of the judgment, with no possibility of an extension."[2] *Banister v.*

*Davis*, 140 S. Ct. 1698, 1702 (2020) (quoting FED. R. CIV. P. 59(e) and citing FED. R. CIV. P.

6(b)(2)). Rule 59(e) "gives a district court the chance 'to rectify its own mistakes in the period

immediately following' its decision." *Id.* (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S.

445, 450 (1982)).

Under Rule 59(e), "a court has discretion to alter or amend a judgment if: (1) it is

presented with newly discovered evidence; (2) it committed clear error or made an initial

decision that was manifestly unjust; or (3) there is an intervening change in controlling law."

*Fenton v. Colvin*, No. 6:14-cv-0350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) (citing

*Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011) and *McDowell v. Calderon*, 197 F.3d

1253, 1255 (9th Cir. 1999)). Courts, however, "will not address new arguments or evidence that

the moving party could have raised before the decision issued." *Banister*, 140 S. Ct. at 1703

(citing 11 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2810.1, pp. 163-

164 (3d ed. 2012)). The Ninth Circuit has also explained that Rule 59(e) "offers an extraordinary

remedy, [which should] be used sparingly in the interests of finality and conservation of judicial

---

[2] Plaintiff timely filed his motion on July 4, 2022, seventeen days after the Court's entry
of judgment.

resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 980 (9th Cir. 2000) (citation omitted).

## II.    ANALYSIS

Plaintiff does not assert that his motion is based on any newly discovered evidence or intervening change in controlling law. (*See* Pl.'s Mot. Alter Amend J. ("Pl.'s Mot.") at 1-7, ECF No. 25.) Plaintiff does, however, suggest that the Court made three clear errors or manifestly unjust decisions.

### A.    Drug Addiction and Alcoholism Analysis

Plaintiff suggests that the Court clearly erred or made a manifestly unjust decision in rejecting Plaintiff's argument that the Administrative Law Judge ("ALJ") failed adequately to assess Plaintiff's substance abuse and did not perform a proper drug addiction and alcoholism ("DAA") analysis. (*See* Pl.'s Mot. at 4, arguing that if the ALJ performed a "[p]roper and [r]equired" DAA analysis after the five-step inquiry, the ALJ would have found that Plaintiff was disabled (bold omitted); *see also* Pl.'s Opening Br. at 20, ECF No. 19, "In effect, the ALJ made a materiality finding without following the proper procedures[.]"). Plaintiff also suggests that the Court clearly erred or made a manifestly unjust decision in holding that the ALJ's alleged failure to perform a DAA analysis was harmless because she "determined that Plaintiff was not disabled absent his drug use." (*See id.* at 4-5, quoting Op. & Order ("O&O") at 8, ECF No. 22.)

#### 1.    The ALJ's Decision

The ALJ found that Plaintiff's PTSD, depression, and polysubstance abuse were severe impairments. (Tr. 19.) The ALJ also found that Plaintiff suffers from no more than moderate mental health-related limitations, pointing in "particular[]" to Plaintiff's abilities and performance on exams "absent substance use" and "sans substance use" and when he was "not

under the effects of substance use" and "adherent to treatment" recommendations. (Tr. 20-21.)
Further, the ALJ cited evidence of Plaintiff's "drastic[] improve[ment]" when he was compliant
with treatment recommendations, taking his medications, and not using drugs. (Tr. 22-24.)
Ultimately, the ALJ concluded that even when considering Plaintiff's substance abuse in
conjunction with his other impairments, Plaintiff had the residual functional capacity ("RFC") to
perform unskilled jobs that did not involve contact with the public, or assembly-line pace work,
but did involve simple, routine, and repetitive tasks, making simple work-related decisions, few,
if any, workplace changes, and occasional contact with coworkers. (*See* Tr. 21, 24, 25-26, 53-54,
stating that the limitations in the RFC are consistent with certain findings at step three and
"*consider*[] [Plaintiff's] PTSD, depression, *and substance abuse* in light of continued failure to
adhere to treatment [recommendations] with correlating worsening of symptoms" (emphasis
added)). Based on the VE's testimony, the ALJ determined that Plaintiff was not disabled.
(Tr. 25-26.)

Notably, although the ALJ stated that her RFC limitations considered and accounted for
Plaintiff's substance abuse, the ALJ's decision focused on Plaintiff's functionality when he was
not using drugs, and repeatedly emphasized the "correlation" between, and a "pattern" of
episodes related to, Plaintiff's acute mental health episodes and "concurrent" drug use. (Tr. 20-
23.) The ALJ cited several examples in support of these findings. (*See* Tr. 22-23, citing Tr. 1891-
92, November 29 and December 3, 2018, after recently being "admitted involuntarily," Plaintiff
was depressed and anxious, endorsed auditory hallucinations, "remain[ed] a high danger to
self/others," and reported "thoughts of suicide[,] feeling hopeless," and "becoming depressed and
suicidal once he realize[d] he no longer ha[d] drugs"; Tr. 404, July 5, 2016, Plaintiff's diagnoses
included "[a]cute psychosis due to methamphetamines" and "[p]olysubstance abuse including

continuous crystal meth abuse, opiate addiction, heroin withdrawal, alcohol abuse, continuous";
Tr. 388, July 3, 2016, Plaintiff "admit[ted] to using methamphetamines" and Plaintiff's transfer
diagnoses included "[e]ncephalopathy due [to] methamphetamine intoxication with some alcohol
intoxication, now resolved" and "[m]ethamphetamine psychosis, now resolved"; Tr. 2230, June
4, 2014, Plaintiff complained of anxiety and hallucinations but reported using methamphetamine,
heroin, and alcohol and being "off his medications for a month" because he "lost them all";
Tr. 2260, March 19, 2014, Plaintiff "admitted to methamphetamine use with associated
symptoms of paranoia and agitation"; Tr. 2676, 2695, December 13, 2013, Plaintiff's VA
hospital admission resulted in diagnoses of a "substance induced psychotic disorder,"
methamphetamine and cannabis abuse, and a "history of [PTSD]," and Plaintiff "improved and
began to recognize the fact that the paranoid thoughts he had been having were the product of the
amphetamine"; *see also* Tr. 544-48, December 3, 2013, Plaintiff's provider noted Plaintiff's
history of "drinking too much," "methamphetamine and cannabis abuse," cocaine use, and "IV
drug use of methamphetamine and heroin along with alcohol and marijuana abuse," that Plaintiff
had previously "refused" a "urine drug screen" and exhibited "behavior concerning for narcotic
seeking," and diagnoses of a "substance induced mood disorder" and methamphetamine and
cannabis abuse).

### 2.    The Court's Opinion and Order

The Court's Opinion and Order rejected Plaintiff's argument that the ALJ failed to
conduct a proper DAA analysis, noting that the ALJ considered all of Plaintiff's impairments,
including substance abuse, in finding that he was not disabled, and thus the ALJ was not required
to perform a DAA analysis. (O&O at 7; *see also* Tr. 24, stating that the RFC limitations are
consistent with certain step-three findings and "consider[] [Plaintiff's] PTSD, depression, and
substance abuse"); *cf. Christina P. v. Comm'r, Soc. Sec. Admin.*, No. 18-236-AC, 2020 WL

589531, at *1 (D. Or. Feb. 6, 2020) ("[A]fter evaluating Plaintiff's disability claim and

conducting the five-step inquiry, the ALJ did not find Plaintiff disabled. Therefore, the ALJ was

not required to engage in a DAA analysis. . . . [T]his [back-up district judge] [also] finds that the

ALJ appropriately used Plaintiff's [inconsistent] statements regarding substance use as part of

[the ALJ's] determination of the reliability of [Plaintiff's] symptom testimony, not to impugn her

character.").

The Court also explained that even if the Court accepted the argument that the ALJ

needed to perform a DAA analysis, any error was harmless because the ALJ "*did* consider

whether Plaintiff would be disabled if he stopped using drugs by qualifying her assessments of

Plaintiff's functioning with statements such as 'particularly when he is not under the effects of

substance use,'" and "determined that Plaintiff was not disabled absent his drug use." (O&O at 8,

quoting Pl.'s Reply Br. at 2, ECF No. 21, Tr. 20-22.) In other words, the Court found any error

was harmless because the ALJ effectively found that Plaintiff's substance abuse was material to

his disability and the ALJ's failure to conduct a formal DAA analysis would not change the

outcome. *See generally Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (explaining that if

the case proceeds past the initial five-step inquiry and to the DAA analysis, the ALJ must assess

"which of the claimant's disabling limitations would remain if the claimant stopped using drugs

or alcohol," and "[i]f the remaining limitations would not be disabling, then the claimant's

substance abuse is material and benefits must be denied"); *Bobo v. Saul*, 798 F. App'x 159, 159-

60 (9th Cir. 2020) (explaining that an error is harmless if it would not alter the outcome of the

case); (*see also* Pl.'s Opening Br. at 20, arguing that "[i]n effect, the ALJ made a materiality

finding").

///

PAGE 6 – OPINION AND ORDER

3.    **Disposition**

As discussed below, in reviewing Plaintiff's motion for reconsideration and the related and relevant arguments Plaintiff raised before the Court issued its Opinion and Order, the Court's research revealed a very similar case where the Seventh Circuit, relying in part on a Ninth Circuit decision, found harmless error. The Court's research, however, also revealed an unpublished Ninth Circuit decision applying a published Ninth Circuit decision and settled legal principles in a manner inconsistent with this Court's Opinion and Order. *See generally Grimm v. City of Portland*, 971 F.3d 1060, 1062-67 (9th Cir. 2020) (explaining that unpublished decisions "can be cited, and may prove useful, as examples of the applications of settled legal principles when a district court or litigant is interested in demonstrating how a given principle operates in practice"); *United States v. Abbassi*, 801 F. App'x 484, 487 (9th Cir. 2020) ("We are bound by [our published decision in] *Evans*, and our decision in *Brewer*, although unpublished, applied *Evans* to a special condition [of supervised release] worded identically to the one here. Under these circumstances, we direct the district court to remedy the deficiency on remand."). As a result, the Court takes this opportunity "to fix [a] mistake[] and thereby perfect its judgment before a possible appeal," *Banister*, 140 S. Ct. at 1708, and grants Plaintiff's motion for reconsideration.

Before addressing cases from this circuit, the Court briefly discusses the Seventh Circuit's decision in *Barrett v. Berryhill*, 904 F.3d 1029, 1031 (7th Cir. 2018). In that case, the ALJ determined that the claimant's alcohol dependence, bipolar disorder, and PTSD were severe impairments. *Id.* At step three, the ALJ concluded that the claimant suffered from no more than moderate limitations, and emphasized that periods of decompensation were "predicated by a relapse of alcohol" and the claimant was "'primarily treated for alcoholism' when hospitalized." *Id.* The ALJ determined that "even when considering impairments from his alcoholism in

conjunction with the others, [the claimant] had the [RFC] . . . to perform simple, repetitive, unskilled work in two-hour increments, with occasional changes to his environment and occasional decision making." *Id.* Relying on a VE's testimony, the ALJ found that the claimant was not disabled. *Id.*

On appeal, "[a] magistrate judge, presiding by consent, 28 U.S.C. § 636(c), affirmed [the ALJ's] decision, concluding that the ALJ 'essentially' found that [the claimant's] alcohol use was material to his disability, and that substantial evidence supported the implicit finding." *Id.* In affirming the magistrate judge's decision, the Seventh Circuit explained that any error was harmless:

> [The claimant] argues that substantial evidence does not support the ALJ's conclusion that his alcoholism was material to his disability. The ALJ, however, concluded that [the claimant] was not disabled considering all his impairments, so any error regarding her materiality analysis is harmless. In fact, because [the ALJ] determined that [the claimant] was never disabled even with his alcohol addiction, [the ALJ] need not even have considered whether his alcoholism was material to his limitations. An ALJ must determine if a claimant's drug or alcohol addiction is material to his or her disability only if the ALJ first finds that the claimant is disabled. Here, the ALJ determined that [the claimant's] impairments, including his alcoholism, taken together were at most moderately limiting, and [the ALJ] concluded that he could have sustained full-time employment. That conclusion is supported by substantial evidence[.] . . .
>
> [The claimant] interprets the ALJ's decision differently and argues that the ALJ erred when she effectively determined that [the claimant's] alcoholism was material before concluding that [the claimant] was disabled considering all his impairments. [The claimant] reads the ALJ's statement that [the claimant's] alcohol use 'predicated' his episodes of decompensation as [an] implicit finding[] . . . that alcoholism was material to his disability. Even based on his interpretation, though, he was not prejudiced by the ALJ's shortcut because, in assessing materiality, the ALJ *accepted* that [the claimant] suffered episodes of decompensation and assumed he was disabled.
>
>         . . . .
>
> Moreover, even if the ALJ did implicitly conclude that [the claimant] was disabled when considering his alcoholism, the record contains substantial evidence that [the claimant's] alcoholism was in fact material to his disability. Evidence of improvement, including positive evaluations during a period of

abstinence, is the 'best evidence' that a claimant's drug or alcohol addiction is
material. . . .

*Id.* at 1031-32 (simplified) (citing, *inter alia*, *Parra*, 481 F.3d at 747); *see also Parra*, 481 F.3d
at 747 (addressing whether "the ALJ erred by failing to conduct the full [initial] five-step
analysis . . . before conducting the DAA Analysis," and explaining that any error was harmless
because although the ALJ's decision did "not explicitly label [the claimant's condition] as
disabling, the ALJ gave [the claimant] the benefit of the doubt: the DAA Analysis assumed that
[the condition] was disabling and focused correctly upon whether abstinence would have cured
this disability").

The ALJ's and Seventh Circuit's decisions in *Barrett* bear many similarities to the ALJ's
and Court's decisions here. The additional cases discussed below, however, call the Court's
opinion into question.

In *Jarvis v. Berryhill*, 722 F. App'x 616, 619 (9th Cir. 2018), the Ninth Circuit noted that
an ALJ "should . . . proceed[] with the [initial] five-step inquiry without attempting to determine
the impact of [the claimant's DAA] on his other mental impairments," and that "it is error for an
ALJ to determine that a claimant's mental impairments are 'the product and consequence of his
[DAA]' before making a determination that the claimant is disabled under the five-step
analysis." *Id.* (quoting *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001)). Consistent
with this understanding, the Ninth Circuit held that the ALJ's initial five-step inquiry was based
on harmful error, noting, among other things, that the ALJ rejected a physician's opinion because
he was "unable to assess the effect of [the claimant's] alcohol dependency on his mental state
and, therefore, his limitations." *Id.* The Ninth Circuit explained that "[i]f—and only if—the ALJ
found [the claimant] was disabled under the five-step inquiry, should the ALJ have evaluated the

role of [the claimant's] alcohol dependency, if any, in establishing the limitations [physicians] identified." *Id.*

Similarly, in *Esslinger v. Astrue*, 479 F. App'x 59, 60 (9th Cir. 2012), the claimant asserted that "the [ALJ] committed legal error by taking into consideration the impact of alcohol and drug abuse on [claimant's] limitations during the initial five-step sequential evaluation." *Id.* The Ninth Circuit "agree[d]" with the claimant and explained that "the ALJ should have considered the impact of substance abuse on [the claimant's] impairments only *after* completing the five-step sequential evaluation *and* finding [the claimant] disabled." *Id.* (citing *Bustamante*, 262 F.3d at 955)). The Ninth Circuit also explained that "substantial evidence [did] not support the ALJ's assessment of [the claimant's] mental RFC because the ALJ improperly discounted the severity of [the claimant's] mental health issues due to substance abuse." *Id.* (citing *Bustamante*, 262 F.3d at 955). The Ninth Circuit therefore "reverse[d] and remand[ed] so that the ALJ [could] complete the five-step sequential evaluation . . . without considering the impact of substance abuse on [the claimant's] mental and physical impairments." *Id.* (citing *Bustamante*, 262 F.3d at 955); *see also Curry v. Colvin*, No. 6:14-cv-00881-BR, 2015 WL 4067193, at *4-5 (D. Or. May 11, 2015) ("[A]lthough the ALJ may make reference to a claimant's substance abuse as relevant to corollary matters (e.g., evidence inconsistent with a claimant's testimony) without conducting the [DAA] analysis, the ALJ may not find a claimant is not disabled . . . because the claimant is more functional in the absence of substance abuse. . . . [T]he ALJ erred when he failed to conduct the separate [DAA] analysis and yet, nevertheless, concluded Plaintiff was more functional and, therefore, not disabled when abstinent from substance abuse." (citing *Esslinger*, 479 F. App'x at 60)).

///

PAGE 10 – OPINION AND ORDER

As in *Jarvis* and *Esslinger*, in *Monan v. Astrue*, 377 F. App'x 629, 630 (9th Cir. 2010), the Ninth Circuit held that remand was "necessary . . . because the ALJ did not perform a proper [DAA] analysis[.]" *Id.* In so holding, the Ninth Circuit explained that "there was no [initial five-step] determination [that the claimant was] 'disabled,'" and thus "while the ALJ discussed [the claimant's] drug use, he could not have performed the mandated DAA absent a disability determination." *Id.*

In reviewing a case from this district, the Ninth Circuit reached a similar result in *Brock v. Berryhill*, 707 F. App'x 459, 460 (9th Cir. 2017). The Ninth Circuit explained that the ALJ harmfully erred "by failing first to consider whether [the claimant] was disabled by the combination of his impairments of bipolar disorder and alcohol addiction before finding that his bipolar disorder standing alone was not disabling." *Id.* In so holding, the Ninth Circuit noted an ALJ commits harmful error "by determining that claimant's mental impairments [are] the product of his alcohol abuse, and not an independently severe or disabling impairment, prior to making a determination whether claimant was disabled under the five-step inquiry." *Id.* at 460-61 (citing *Bustamante*, 262 F.3d at 954-55). The panel-majority's decision in *Brock* resulted in one dissent. *See id.* at 461 (Trott, J., dissenting) ("I agree with the Acting Commissioner's brief: 'Remanding on this [alleged] error strictly for the ALJ to conduct the formal two-step DAA process could only change the reason for his denial of benefits, not the outcome of the case.' There was no error, but if there was, [the district judge] was correct: it was harmless. . . . Thus, I respectfully dissent.").

The ALJ's harmful error in *Brock* is similar to the ALJ's error here. In *Brock*, there was no initial step-five determination that the claimant was disabled, and supporting a finding of nondisability, the ALJ "identified substance addiction disorder and affective disorder

as . . . severe impairments," discussed "the instances in which [the claimant's] other severe impairment . . . was less functionally limiting when [the claimant] was sober and in compliance with his medications," described "instances of improvement when [the claimant] was not drinking and when he was compliant with medications," relied on "evidence of [the claimant's] functioning during periods of sobriety," concluded that the claimant's "symptoms were controlled during periods of sobriety and medication compliance," and stated that the claimant's "alcohol use and noncompliance with medications caused his symptoms to worsen." *Brock v. Colvin*, No. 3:15-cv-01021-KI, 2016 WL 3511783, at *2-4 (D. Or. June 27, 2016), *rev'd*, 707 F. App'x at 459-60.

As in *Brock*, there was no initial step-five determination of disability, and the ALJ found that Plaintiff's polysubstance abuse, PTSD, and major depressive disorder were severe impairments. (Tr. 19-26.) As in *Brock*, the ALJ emphasized Plaintiff's abilities and limitations "particularly when he is not under the effects of substance use," "particularly absent substance use," when he is "adherent to treatment," and "particularly when adherent to treatment and sans substance abuse." (Tr. 20-21.) The ALJ also emphasized that there was "a good correlation between acute episodes and drug use," Plaintiff's "off-and-on" substance abuse "coincid[ed] with extended periods of homelessness," medical providers "attributed [Plaintiff's] psychotic symptoms to substance use," Plaintiff "recognized that the paranoid thoughts he had been having were due to the amphetamine he had taken," an "acute mental health episode" was "contemporaneous with recent drug use," a hospital admission was for "*methamphetamine induced* psychosis and suicidal ideation," Plaintiff's symptoms "drastically improve[d]" when he was "taking his medication and not under the influence of substances," a VA disability decision "did not even acknowledge substance abuse was a concurrent issue," and there was a "pattern" in

which Plaintiff's "symptoms became uncontrolled when he was not adherent to treatment or using substances." (Tr. 22-23.)

The ALJ's analysis here is inconsistent with the Ninth Circuit's application of settled legal principles, including *Bustamante*. *See Jarvis*, 722 F. App'x at 619 (explaining that an ALJ should "proceed[] with the [initial] five-step inquiry without attempting to determine the impact of [the claimant's DAA] on his other mental impairments," and that "[i]f—and only if—the ALJ [finds that the claimant] was disabled under the five-step inquiry, should the ALJ . . . evaluate[] the role of [the claimant's DAA], if any, in establishing the limitations [at issue]" (quoting *Bustamante*, 262 F.3d at 955)); *Esslinger*, 479 F. App'x at 60 ("[The claimant asserts that the ALJ] committed legal error by taking into consideration the impact of alcohol and drug abuse on [the claimant's] limitations during the initial five-step sequential evaluation. We agree. Instead, the ALJ should have considered the impact of substance abuse on [the claimant's] impairments only *after* completing the five-step sequential evaluation *and* finding [the claimant] disabled. . . . We reverse and remand so that the ALJ can complete the five-step sequential evaluation . . . without considering the impact of substance abuse on [the claimant's] mental and physical impairments." (citing *Bustamante*, 262 F.3d at 955)); *Monan*, 377 F. App'x at 630 ("[T]here was no determination of 'disabled.' Thus, while the ALJ discussed [the claimant's] drug use, he could not have performed the mandated DAA absent a disability determination."); *Brock*, 707 F. App'x at 460 (noting that the ALJ's finding of nondisability relied, in part, on evidence about the claimant's "relative mood stability when [he] was not drinking and was medication-compliant," and explaining that "the ALJ erred by failing first to consider whether [the claimant] was disabled by the combination of his impairments of bipolar disorder and

alcohol addiction before finding that his bipolar disorder standing alone was not disabling" (citing *Bustamante*, 262 F.3d at 954-55)).

For these reasons, the Court grants Plaintiff's motion for reconsideration, vacates its prior judgment, and remands this case to allow the ALJ to complete the initial five-step sequential evaluation without considering the impact of Plaintiff's substance abuse on his mental and physical impairments. "If the ALJ concludes that [Plaintiff] was disabled, [s]he must then determine whether each limitation entitling him to disability would remain in the absence of [DAA]." *Esslinger*, 479 F. App'x at 60.

B.      **Plaintiff's Remaining Arguments**

Plaintiff suggests that the Court clearly erred or made a manifestly unjust decision in affirming the ALJ's discounting of Plaintiff's symptom testimony and assessment of Plaintiff's limitations and whether he met or equaled one of the listed impairments at step three. (*See* Pl.'s Mot. at 2-4, 7.) The Court need not reach these remaining arguments because the ALJ must properly consider the record at step three and later steps in making the initial five-step sequential evaluation on remand.

///

///

///

///

///

///

///

///

///

## CONCLUSION

For the reasons stated, the Court GRANTS Plaintiff's motion to alter or amend the judgment (ECF No. 25), and VACATES the Court's Opinion and Order and Judgment dated June 17, 2022 (ECF Nos. 22-23). The Court will issue an amended judgment remanding this case for further proceedings consistent with this Opinion and Order. *See Burtenshaw v. Berryhill*, No. 5:16-cv-02243, 2018 WL 550590, at *1-2 (C.D. Cal. Jan. 23, 2018) (granting the claimant's motion for reconsideration under Rule 59(e) based on an unpublished Ninth Circuit decision, vacating the Court's previous order and judgment, and issuing an amended judgment in the claimant's favor).

**IT IS SO ORDERED.**

DATED this 3rd day of November, 2022.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge